Carl J. GRAMMER, Petitioner,

v.

STATE INDUSTRIAL COURT of Oklahoma, and the Special Indemnity Fund, Respondents.

No. 41899.

Supreme Court of Oklahoma.

June 27, 1967.

Rehearing Denied Nov. 7, 1967.

Brown, Brown, Brown & Hackler, Mc-Alester, for petitioner.

Sam Hill and Fred Nicholas, Jr., Oklahoma City, Chas. R. Nesbitt, Atty. Gen., for respondents.

LAVENDER, Justice.

The claimant herein filed in the State Industrial Court of this state a claim against McAlester Sand & Gravel Company and its insurance carrier for compensation under the Workmen's Compensation Law of this state for an accidental personal injury to his back received in this state, and on the theory that he was a "physically impaired person," as defined in 85 O.S.1961, § 171, named the Special Indemnity Fund as an additional respondent. By joint petition, the claimant and the employer and its insurance carrier settled such claim for $3,000.00, on the agreed basis of 25 per cent permanent partial disability of the body as a whole, in addition to the authorized, reasonable and necessary medical expenses theretofore incurred by the claimant and any sum or sums theretofore paid to the claimant. The State Industrial Court after a hearing on such joint petition approved such settlement, reserving the claimant's rights against the Fund, and the claimant's receipt for the amount involved was filed in the cause.

At a later hearing on the claim against the Fund, the claimant testified that he had received an industrial injury to his back in the State of California in 1957; that as a result thereof an operation had been performed on his back, and that he had compromised and settled his workmen's compensation claim against the employer and its insurance carrier, and such settlement had been approved by the Industrial Accident Commission of the State of California. He also testified that he had received another industrial injury to his back in the State of Oregon in 1962; that as a result thereof another operation was performed on his back, and that he had compromised and settled his workmen's compensation claim against that employer, and such settlement had been approved by the State Industrial Accident Commission of the State of Oregon. Certified copies of the orders of those two Industrial Accident Commissions were received in evidence. Claimant also testified concerning the Oklahoma accident involved and the settlement of his claim therefor on joint petition approved by the State Industrial Court of this state. There was medical testimony concerning the degrees of impairment from the last injury and from the

combined injuries, but we are not concerned with that matter in this cause.

After a hearing, the trial judge of the State Industrial Court found that the claimant did not come within the class of "physically impaired persons," as such term is used in the Special Indemnity Fund Act and therefore denied petitioner's claim against such Fund. Claimant has brought the case to this court for review of such order.

The Special Indemnity Fund Act was originally enacted as House Bill No. 249 of the 1943 regular session of the Oklahoma Legislature and, as amended in 1961, appears as 85 O.S.1961, §§ 171 through 176.

For the purpose of carrying out the provisions of the Act, Section 3 of the Act (85 O.S.1961, § 173) creates a "Special Indemnity Fund," to be derived from the sources specified in that section.

Section 2 of the Act (85 O.S.1961, § 172) provides, insofar as pertinent herein, that:

"If an employee who is a 'physically impaired person' receives an accidental personal injury compensable under the Workmen's Compensation Law which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities, as is now provided by the laws of this state. If such combined disabilities constitute partial permanent disability or permanent total disability, as now defined by the Workmen's Compensation Laws of this state, then such employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury, and in addition thereto such employee shall receive full compensation for his combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a 'physically impaired person,' as defined herein, all

of which shall be computed upon the schedule and provision of the Workmen's Compensation Law of this state. Provided the employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no pre-existing impairment. After payments by the employer or his insurance carrier, if any, have ceased, the remainder of such compensation shall be paid out of the Special Indemnity Fund provided for in § 173 of this title, in periodical installments."

Section 1 of the Act (85 O.S.1961, § 171), with the numerals appearing herein in parenthesis being inserted by the court for clarity and convenience, provides that:

"For the purpose of this Act, the term 'physically impaired person' is hereby defined to be a person who as a result of accident, disease, birth, military action, or any other cause, has suffered (1) the loss of the sight of one eye, (2) the loss by amputation of the whole or a part of some member of the body, or (3) the loss of the use, or partial loss of the use, of a specific member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, or (4) any disability which previously had been adjudicated and determined by the State Industrial Commission."

For convenience, we shall refer to the disabilities described in categories (1), (2) and (3) of this section as "member" disabilities. "Non-member" disabilities, as used in this opinion will refer to disabilities not falling within any of those first three categories.

Claimant's attorney advised the trial court that neither of the first two accidents involved injury to a member of the claimant's body, and there was no evidence that the third accident, in Oklahoma, involved an injury to any member of the claimant's body. Therefore, claimant was not a "physically impaired person" within the definition of that term set forth in 85 O.S.

1961, § 171 unless his previous disability had been adjudicated and determined by "the State Industrial Commission" within the meaning of that term as used in said Section 171.

■ The definition of a "physically impaired person," set forth in 85 O.S.1961, § 171, fixes the jurisdiction of the State Industrial Commission over the Special Indemnity Fund. Special Indemnity Fund v. Patterson et al., 202 Okl. 637, 217 P.2d 536; Special Indemnity Fund v. Hunt et al., 200 Okl. 1, 190 P.2d 795.

■ Approval by the State Industrial Commission of this state of the settlement of a previous workmen's compensation claim on joint petition constitutes a previous adjudication and determination of the disability involved by such Commission for the purposes of the Special Indemnity Fund Act. Special Indemnity Fund v. Simpson et al., Okl., 349 P.2d 635; Special Indemnity Fund v. Bonny et al., Okl., 397 P.2d 152.

For the purposes of this opinion, we shall treat the approval by the State Industrial Accident Commissions of the States of California and Oregon of the respective compromises and settlements of his workmen's compensation claims in those states as previous adjudications and determinations of the disabilities involved therein by those agencies.

Thus, the question presented herein is whether the Legislature intended to limit the term "the State Industrial Commission," as used in the fourth category of disabilities set forth in Section 1 of the Special Indemnity Fund Act (85 O.S.1961, § 171), to the State Industrial Commission of this state, or whether it was the legislative intent to include, as well, the agencies of the other states which adjudicate and determine claims under the workmen's compensation laws of their states.

We note here that in 1959 the name of the State Industrial Commission created by designated Oklahoma statutes was, by statute, changed to the "State Industrial Court," and such statute (85 O.S.1961, § 91) provides that wherever the term " 'State Industrial Commission' " is used in any statute of the State of Oklahoma, that term shall be construed to mean, and shall mean, such State Industrial Court.

We also note that, in prescribing the two sources from which the Special Indemnity Fund would be derived, Section 3 of the Special Indemnity Fund Act, as originally enacted in 1943, provided that (a) Each mutual or inter-insurance association, stock company, the State Insurance Fund, or other insurance carrier writing workmen's compensation insurance in this state, and each self-insurer, shall, annually, on or before the first day of March, contribute to the Special Indemnity Fund a sum equal to one per cent of the total compensation for permanent total disability and permanent partial disability paid out by such insurance carrier or self-insurer during the preceding calendar year, and (b) where an award has been made by "the State Industrial Commission," or any payments in lieu thereof, for compensable injury for a permanent total disability and/or a permanent partial disability, one per cent of such award shall be withheld from the injured employee and be paid into the Special Indemnity Fund.

As amended in 1961, that section of the Act (85 O.S.1961, § 173), in prescribing the two sources from which the Special Indemnity Fund shall be derived, requires that the contributions by each insurance carrier writing workmen's compensation insurance in this state, and by each self-insurer, be made quarterly to the fund, in a sum equal to two per cent of the total compensation for permanent total disability or permanent partial disability paid out or payable during each quarter-year period, and that, where an award has been made by "the State Industrial Court," or any payments in lieu thereof, for compensable injury for permanent total disability or a permanent partial disability, two per cent of the award shall be withheld from the in-

jured employee and be paid into the Special Indemnity Fund.

From a consideration of the Special Indemnity Fund Act in its entirety, as originally enacted and as amended in 1961, we perceive a legislative intent for the terms "the State Industrial Commission" and "the State Industrial Court," as used therein, to mean only the agency of the State of Oklahoma which prior to June 16, 1959 was designated the "State Industrial Commission" and since that date has been, and is, designated the "State Industrial Court."

This means, of course, that at the time of his last injury the claimant herein was not a "physically impaired person" within the definition of that term as set forth in Section 1 of the Special Indemnity Fund Act (85 O.S.1961, § 171) and, therefore, was not a "physically impaired person" within the meaning of that term as used in said Act.

The claimant contends that so holding would be to classify him, arbitrarily and capriciously, in violation of Section 59 of Article 5 of the Oklahoma Constitution which provides that "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted"; and, therefore, that the disabilities described in the fourth category of Section 1 of the Special Indemnity Fund Act, in defining the term "physically impaired persons" as used in the Act, must be construed to include all "nonmember" disabilities that have been adjudged and determined by the industrial commission or court of any state, because in view of that provision of our Constitution that must have been the legislative intent in adopting the Act.

Claimant recognizes that in the 1945 case of Special Indemnity Fund v. Farmer et al., 195 Okl. 262, 156 P.2d 815 (wherein the pre-existing disability was a "member" disability and the Fund contended that the Act was violative of Section 59 of Article 5 of our Constitution), this court held that the Act was not violative of that section of the Constitution. But, in support of his proposition concerning the purpose and intent of the Legislature in adopting the Act, he relies upon a statement in the opinion to the effect that the legislation puts all "physically impaired persons" described in the Act in a class by themselves and "operates equally upon all the subjects within the [designated] class for which it was adopted." Apparently his theory is that he is just as physically impaired as he would have been if his previous disabilities had been acquired in Oklahoma and had been adjudged and determined by the State Industrial Commission (Court) of the State of Oklahoma.

There can be no doubt but that the Special Indemnity Fund Act was adopted because employers were loathe to, and even refused to, hire any person having a permanent disability, since under the Workmen's Compensation Law if such a person sustained a compensable injury his employer at the time would be liable for compensation for the degree of disability resulting from that injury and the previous disability (assuming the injuries to be combinable); and that the purpose of the Act was to permit employers to employ any person who fell within the class therein designated as "physically impaired persons" without assuming liability for compensation for the degree of disability that would result from a new compensable injury and the previous disability. Cameron & Henderson, Inc. v. Franks et al., 199 Okl. 143, 184 P.2d 965; Special Indemnity Fund v. Sims et al., 196 Okl. 101, 163 P.2d 210.

It is clear from a consideration of the entire Act that the legislative intent was to reduce, not to eliminate, this field of unemployables by removing the former objection to employing the unemployables, and to do so by removing—as to the particular portion, or class, of such unemployables which is designated in the act as "physically impaired persons," as that term is defined in Section 1 of the Act—the former objection to employing persons hav-

ing a permanent disability. This was to be accomplished, and was accomplished, by providing for the apportionment, between the employer and the Special Indemnity Fund therein created, of the liability for the payment of the total amount of compensation provided in the Workmen's Compensation Law for permanent disability in cases involving compensable injuries to persons within the designated class, with the employer's liability being limited to compensation for the degree of disability that would have resulted from the last injury in the absence of the previous disability.

■ When a person having a permanent disability becomes employed, the fundamental purpose of the Act has been served insofar as that person is concerned. From that point on, all of the benefits provided by the Act accrue to the employer. If that employee sustains a compensable permanent injury, he is entitled to the same total amount of compensation, no more and no less, that he would be entitled to receive under the Workmen's Compensation Law if this Act had not been adopted, regardless of whether or not he was a "physically impaired person" as defined in Section 1 of this Act. The only difference is that if he was such a "physically impaired person" the Special Indemnity Fund may be liable for a portion of his total award, but if he was not such a "physically impaired person" his employer at the time of the last injury is liable for the total amount.

/ ■ While the Act may help one class of persons with disabilities to become employees and not help other persons with disabilities to become employees, it makes no distinction, arbitrary, capricious, or otherwise, between employees, insofar as the amount of workmen's compensation that they are entitled to receive, if injured, is concerned.

In his argument concerning discrimination, the claimant states: "There seems to be no reasonable justification for not according to the decisions of Industrial Courts of other states the same weight, faith, and credit as those of the Oklahoma Industrial Court in determining that Petitioner is a '*previously* impaired person.' "

■ The trial court did not hold that claimant was not a "*previously* impaired person" contrary to the orders of the industrial accident commissions of the two states involved. It held that he was not a "physically impaired person" within the definition of that term set forth in 85 O.S.1961, § 171, in spite of those orders from other states. This was not a matter of enforcing, or refusing to enforce, a judgment or order of the industrial accident commissions of such other states. The Special Indemnity Fund Act, as construed herein, and by the trial court, does not affect in any way any right, benefit, privilege or immunity provided to the claimant in those prior orders.

Claimant's contention that our construction of the term "the State Industrial Commission," as used in Section 1 of the Special Indemnity Fund Act (85 O.S.1961, § 171) would be contrary to the legislative intent in adopting that Act and would discriminate against him, and others in his situation, in violation of Section 59 of Article 5 of the Constitution of the State of Oklahoma cannot be sustained.

The order appealed from herein is sustained.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, HODGES and McINERNEY, JJ., concur.

BERRY, J., dissents.