Corbin H. WHITENER,
Claimant–Petitioner,

v.

SOUTH CENTRAL SOLID WASTE AU-
THORITY and State Insurance Fund,
Employer and Risk Carrier–Respon-
dents.

No. 69224.

Supreme Court of Oklahoma.

April 18, 1989.

Rehearing Denied June 13, 1989.

Richard A. Bell, Jr., Norman, for claim-
ant-petitioner.

Fred Nicholas, Jr., Robert Highsaw, Oklahoma City, for respondent, State Ins. Fund.

OPALA, Vice Chief Justice.

The dispositive issue on certiorari is whether the employer's medical letter-report, on which the trial tribunal's decision is rested, lacks probative value and hence cannot support the denial of permanent disability benefits to the claimant. We answer in the negative.

I.

ANATOMY OF LITIGATION

Claimant, Corbin H. Whitener, sought compensation benefits for job-related harm he sustained while employed by South Central Solid Waste Authority, whose risk carrier is State Insurance Fund [collectively called employer]. According to the transcript, the claimant's medical report was admitted without objection. His physician rated compensable disability at 35% permanent partial respiratory impairment. When the employer tendered its physician's report, which found the claimant to be *free of permanent impairment*, the claimant "objected" to the exhibit's admission *solely for lack of probative value*.[1] The trial judge admitted the report and "noted" the challenge to its probative effect but made no ruling on this issue.[2]

The trial tribunal found the claimant's continuous inhalation of "harmful dust, smoke and fumes" caused him to suffer "an occupational disease consisting of injury to the lungs and upper respiratory system" but concluded that he had sustained *no permanent* partial disability. The claimant sought review.

In the Court of Appeals the claimant argued the employer's medical evidence does not support the benefits' denial because 1) it is "incompetent" and 2) it lacks probative value since the physician failed to evaluate the claimant's compensable harm in accordance with the American Medical Association's "Guides to the Evaluation of Permanent Impairment" [the Guides].[3] Their use is required by the terms of 85 O.S.Supp.1987 § 3(11).[4] For reasons not

---

1. In compensation practice, an *objection* to the *"competency"* of a medical report is directed to the exhibit's *admissibility* on hearsay or other legal grounds. Another type of "objection" known to that practice addresses itself to the *probative value* of a physician's letter-report. The latter procedural device is used to *challenge* the expert opinion for insufficiency as legal proof of (a) medical findings with respect to the presence or absence of compensable disability or of (b) the compensable impairment's rating. The real issue raised by the challenge to the exhibit's probative effect is whether the evidence—*once admitted*—is *probative* of the elements it seeks to establish or, to use simpler parlance, whether it tends to prove that which it was adduced to show. In sum, a true *objection* resists only the exhibit's legal *admissibility*, while a challenge for lack of probative value— the approximate functional counterpart of a district-court demurrer to the evidence—tests the legal sufficiency of targeted written proof to establish the evidentiary elements for which it was adduced.

2. Neither at the hearing nor at any point before issuing the order denying compensation did the trial judge expressly rule on the claimant's challenge to the probative value of the employer's

medical evidence. *The better practice, and one more in keeping with the notions of fairness to both parties, is to make an in-trial ruling on the "objection" or to take the challenge under advisement.* If a mid-hearing ruling cannot be made and the trial judge decides afterwards that the challenge should be sustained, the party who tendered the objectionable exhibit should be afforded a reasonable opportunity to replace the flawed report with one that can withstand the scrutiny of the challenge which was or would likely be sustained. On the other hand, if a probative value challenge is upheld and the disadvantaged party then *elects to stand on its report*, the claim could be considered submitted for decision upon the evidence adduced at the hearing.

3. American Medical Association's "Guides to the Evaluation of Permanent Impairment," 2d ed. [1984].

4. The pertinent terms of 85 O.S.Supp.1987 § 3(11) are:

"... Except as otherwise provided herein, *any examining physician shall only evaluate impairment in accordance with the latest 'Guides to the Evaluation of Permanent Impairment'* adopted and published by the American Medi-

explained in any detail, the appellate court concluded that the employer's medical report "... was not in substantial compliance with 85 O.S.1981, ch. 4, app., Rule 20, and was not competent evidence." The claim was remanded with instructions to award the claimant benefits for "35% permanent partial impairment to the body as a whole" —the rating given in his physician's report. We now grant certiorari upon employer's petition.

 The only issue to be addressed is whether the employer's medical report has *probative value*. Its *admissibility or "competence"* is not before us. This is so because the claimant waived his objection to the report when he did not contest that exhibit's admissibility at the time of its offer into evidence.[5] Upon claimant's failure to object timely, the report stood admitted by force of Rule 21, Rules of the Workers' Compensation Court.[6]

cal Association. The examining physician *shall not deviate* from said guides except as may be specifically provided for in the guides. *These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment* with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides." [Emphasis added.]

5. Before the hearing the claimant did file an objection to the employer's medical report within ten days after receiving it. Under Rule 20, Rules of the Workers' Compensation Court, *infra*, a timely written objection, like that which the claimant interposed, triggers a procedure for deposing the medical expert. According to the appellate record, the deposition was not taken. At the hearing the claimant directed his "objection" *solely to the probative value* of the employer's medical report. We must hence deem his pre-hearing objection to have been withdrawn. In any event, as we analyze the claimant's arguments on review, they all constitute an attack on the employer's medical report for its lack of probative value, rather than a complaint of its erroneous admission.

The pertinent terms of 85 O.S.Supp.1987, Ch. 4, App., Rule 20, Rules of the Workers' Compensation Court, are:
"* * *
*Within ten (10) days of receiving a copy of the other party's verified or declared report, a*

## II.

## THE EMPLOYER'S MEDICAL REPORT DOES NOT LACK PROBATIVE VALUE FOR FAILURE TO COMPLY WITH THE AMA GUIDES

Claimant urged the "pulmonary function studies" described in the employer's medical report deviate from the Guides' requirements and sap the report of probative effect insofar as the claimant's lungs were found to be free from permanent impairment. In our view, the employer's medical report conforms to the standards prescribed by the Guides, and the values attributed to the claimant's condition are consistent with the report's ascribed rating of no permanent impairment. The trial tribunal's denial of benefits for respiratory impairment hence rests on medical evidence which is probative of the compensable harm's rating.

*party-recipient shall advise the Court in writing if there is an objection to the admission of the verified or declared report in evidence.* A copy of the objection shall be mailed to all parties of record in the claim. *Unless the Court and the other parties are timely notified of the objection,* the party-recipient of the verified or declared report *shall be deemed to have waived* the right to object and the verified or declared report *shall be admitted* into evidence at the trial. *When a timely objection is received,* the party intending to offer the verified or declared report *shall, within a reasonable time,* arrange for the taking of the physician's deposition." [Emphasis added.]

6. The pertinent terms of 85 O.S.Supp.1987, Ch. 4, App., Rule 21, Rules of the Workers' Compensation Court, are:
"* * *
*An objection to medical testimony offered by verified or declared report, if on the grounds that* (1) *it is* based on inaccurate or incomplete history or is otherwise *without probative value,* or (2) it does not properly evaluate claimant's impairment or disability, as the case may be, in accordance with the Workers' Compensation Act, *must be interposed at the same time it is offered into evidence."*
*"Unless an objection is timely made, it shall be waived.* Any legally *inadmissible* evidence that stands admitted without objection *shall be regarded as admitted* as part of the proof in the case." [Emphasis added.]

The claimant initially attacks the employer's report, arguing that the results of *two of the three* measurements or tests, which were either made by the physician or capable of being made by calculation, warrant a finding that the claimant is 10–25% impaired.[7] The Guides clearly state: *"if an impairment is to be rated,"* then *"at least one* of these [three] measures of ventilatory function *should be* abnormal to the degree described in a given class definition."[8] [Emphasis added.] While the claimant maintains that this rule somehow works to his advantage, he *admits* "[t]here is nothing in ... [the] report that casts any doubt on the validity of the pulmonary function study results he [the employer's medical expert] relies on." *Even if we were to assume*, as the claimant urges, that the data from two of the three tests do indicate permanent impairment, the third test's result *supports* the physician's conclusion that the claimant sustained no permanent impairment.[9] Inasmuch as an impairment rating may be rested on the results of but *one* of the three breathing measurements, we conclude that the employer's medical report is not fatally deficient in probative force. The Guides clearly permit *alternative* conclusions when evaluating the same raw data.[10]

The claimant next contends that the employer's medical expert's opinion is defective because, without an explanation by the physician in his report, some of its numerical data deviate from those which should have been used according to the Guides. The claimant seems to argue that *regardless* of whether the numbers have any impact on impairment classification, the report has no probative value because it contains inaccurate or erroneous data. In our view, the physician's data analysis substantially conforms to the AMA Guides' standards.

A medical expert's permanent impairment evaluation must *substantially comply* with the methods and standards prescribed by the Guides.[11] Noncompliance may be apparent from mere reference to the Guides. That was the case in *LaBarge v. Zebco*.[12] There, a specific impairment percentage for each of two ruptured discs that required surgery was *plainly mandated* by the AMA manual and ignored by the rating physician. The *LaBarge* test for determining whether the standards are followed when clearly applicable is whether, from a medical report's four corners, an unexplained, *facially apparent* and substantial deviation from the Guides can be detected by mere reference to their text. The claimant's attack on the employer's letter-report calls for a different analysis of its probative force.

Here, the Guides contain tables from which "normal" values are obtained according to raw data, i.e., height and age. A constant, called the "95% Confidence Interval," *must* be subtracted from the table-de-

---

7. When respiratory impairment is to be evaluated by testing a claimant's mechanical ventilatory function, the Guides prescribe three component parts of the measurement: forced vital capacity (FVC), forced expiratory volume in the first second (FEV–1) and their ratio (FEV–1/FVC). Each of these parts constitutes a test or criterium which may be used to determine the percentage of impairment, if any be found. According to the Guides, actual test results *should be compared* with predicted "normal" values for FVC, FEV–1 and FEV–1/FVC ratio. The latter figures are derived from tables using the patient's age and height. AMA Guides, *supra* note 3 at 89.

8. AMA Guides, *supra* note 3 at 89.

9. We note that, according to the *employer's* medical evidence, the results of *two* pulmonary function tests support the physician's finding that the claimant sustained no permanent respiratory impairment.

10. "To be placed in a specific class, an individual need not meet all the criteria of that class." AMA Guides, *supra* note 3 at 98.

11. 85 O.S.Supp.1987 § 3(11), *supra* note 4; *Special Indem. Fund v. Stockton*, Okl., 653 P.2d 194, 200 [1982].

12. Okl., 769 P.2d 125 (1988).

rived number.[13] Percentages must then be calculated to compare "normal" values with actual values. Evaluating respiratory impairment by the use of mechanical ventilatory tests requires at least one calculation: subtracting the given constant from each value derived from a table. In short, *mere reference to the Guides does not facially reveal here that their commands went unheeded when the employer's physician evaluated the claimant's compensable impairment to the lungs.*

The claimant provides us with a chart to illustrate the alleged flaws in the data reported by the employer's medical expert. Our analysis of that information impels the conclusion that the only noteworthy inaccuracy to be found is in the numbers which *the claimant* tenders as correct. Using the employer's raw data, he failed to subtract the appropriate constant from the values which were derived from the Guides' tables. This error doubtless has led the claimant to believe that the employer's medical expert fatally deviated from the mandatory norms for evaluating respiratory impairment. The employer's medical evidence clearly is not flawed for lack of probative value. We hold it free of legally vitiating deficiency.

CERTIORARI IS GRANTED. OPINION BY THE COURT OF APPEALS IS VACATED; THE TRIAL TRIBUNAL'S DENIAL OF PERMANENT DISABILITY BENEFITS TO THE CLAIMANT IS SUSTAINED.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN and SUMMERS, JJ., concur.

SIMMS and KAUGER, JJ., concur in result.

ALMA WILSON, J., dissents.

---

**13.** AMA Guides, *supra* note 3 at 89.