**Gary D. PARKS, Petitioner,**

v.

**BLUE CIRCLE, INC., Liberty Mutual Insurance Co. and the Workers' Compensation Court, Respondents.**

**No. 71657.**

Supreme Court of Oklahoma.

May 19, 1992.

---

Richard A. Bell, Norman, for petitioner.

McGivern, Scott, Gilliard, McGivern and Robinson by Paul V. McGivern, Jr., Tulsa, for respondents.

HODGES, Vice Chief Justice.

The issue in this case is whether there was any competent evidence to support the Workers' Compensation Court's order denying benefits to the claimant, Gary Parks. The Workers' Compensation Court held that the "claimant did not sustain an occupational disease or accidental personal injury to the LUNGS OR UPPER RESPIRATORY SYSTEM arising out of and in the course of claimant's employment." The Court of Appeals sustained the Workers' Compensation Court's order. This Court granted certiorari.

The claimant filed a form 3 on May 8, 1987. At the time of trial, Gary Parks, the claimant, was forty-one years old. He started working for Blue Circle, Inc., respondent, in June of 1969. Claimant testified that he had smoked daily a pack of cigarettes intermittently for ten to fifteen years. The claimant further testified that he had been exposed to dust and chemicals for 18 years while working for respondent. In his form 3, the claimant maintained he had suffered injury to his lungs and upper respiratory system. The claimant testified that he bowls once a week and plays golf three to four times a week. Seventy-five to eighty percent of the time that he plays golf, he carries his clubs and walks eighteen holes.

The claimant presented the medical report of Dr. Miller. Neither the competency nor the probative value of that report is before this Court. Therefore, we need not address those issues.

Dr. Miller's deposition reflects his answers to certain questions as follows:

Q Now the man has a twenty-year history of smoking.

A That's true.

Q Isn't it likely this man's problems are due to his long history of smoking?

A Well, he smoked for a long time before he worked there.

Q He also worked there for a long time before he developed symptoms. Isn't that correct?

A That is true. Not all smokers develop lung problems, of course. So, you know, who is to say which caused what, you know.

Q That's my point. You really can't testify here today with any type of degree of medical certainty that this man's problems are due to his work exposure or whether it's due to his cigarette smoking.

A But we can't, on the other hand, say that it isn't due to his environment either.

Respondent offered the medical report of Dr. Fielding. Dr. Fielding's report reflects that the claimant told him that he mows his

lawn. "[I]f it is hot, he may have some trouble breathing, but if the weather is not real hot, it does not bother him." The claimant also reported that he was not on any medication and has not sought medical attention for his lungs. He also denied cough or sputum production. Dr. Fielding found the claimant to be a healthy male with "[n]o evidence of upper or lower respiratory tract disease other than a mild allergic type rhinitis or hay fever appearance in the nasal membranes." Dr. Fielding also found that the claimant had no impairment. He did not conduct a $D_{co}$ test before reaching his conclusions.

A third examination was conducted by Dr. Hallford who was court-appointed. The claimant reported to Dr. Hallford that he had "mild shortness of breath and dyspnea on exertion," that he had an occasional cough, and that he got "winded when climbing 2 or more flights of steps or sometimes while walking on flat surfaces." The claimant also reported that he plays golf and walks eighteen holes without any problems usually. He reported that he smoked one pack of cigarettes a day off and on for 15 years and smoked 3–4 cigars a day for over 20 years. Dr. Hallford did not give the claimant a $D_{co}$ test. Dr. Hallford found that the claimant's mild shortness of breath at times was appropriate for the activity, that the claimant had normal pulmonary function studies and a normal examination. Dr. Hallford also found that the claimant had a mild small airway obstruction caused by smoking cigarettes and cigars but that the claimant had incurred no apparent permanent disability.

Before the Court of Appeals and in his Petition for Certiorari, the claimant argued that the medical reports of Dr. Miller and Dr. Hallford were incompetent because neither report rated the different parts of the body to which the claimant is complaining of injury, namely the upper respiratory system. Also the claimant argued neither report included a $D_{co}$ test as required by the American Medical Association's 1984 *Guides to the Evaluation of Permanent Impairment (Guides)*[1] because the claim-

ant's complaints were of greater severity than the spirometry tests would indicate.

■ The issue of whether the $D_{co}$ test should have been given is controlled by *Orrell v. B.F. Goodrich*, 787 P.2d 848 (Okla.1990). In *Orrell*, the claimant argued that the $D_{co}$ test was required because his complaints were of greater severity than the spirometry test indicated. The respondent's doctor found that the history of dyspnea was consistent with the spirometry tests. This Court held whether the complaints are of greater severity than the spirometry results are within the "area of medical discretion which a court should not normally delve into." Thus, a $D_{co}$ test was not always required before a claimant could be rated at zero impairment.

Then in *Davis v. B.F. Goodrich*, 826 P.2d 587 (Okla.1992), this Court reaffirmed *Orrell*. In *Davis*, this Court stated:

> Step II of the physiologic evaluation is the $D_{co}$ test. Even though the Step I results are within the normal range, if the patient's respiratory complaints are inconsistent with that range, then the $D_{co}$ test must be given. It is within the physician's medical expertise to determine if the complaints are inconsistent with the spirometry results. The 1984 Guide does not require the $D_{co}$ test as a prerequisite to a zero impairment rating in all circumstances.

In the present case, neither doctor specifically stated that the complaints were consistent with the ventilatory function tests. We do not find this to be a fatal flaw in that both doctors stated that their reports complied with the American Medical Association's *Guides to the Evaluation of Permanent Impairment*. In order for the report to be in compliance with the *Guides*, it was necessary that the doctor tendering the report find that the complaints were not of greater severity than the ventilatory function tests would indicate. Neither of the reports was incompetent for failure to give the $D_{co}$ test.

1. The *Guides* were amended in 1988 and 1990.

14

We next turn to the argument that the two reports were incompetent for failure to rate the upper respiratory system. The claimant argues that title 85, the appendix to chapter 4, rule 20 of the Oklahoma Statutes requires "that the physician in a written narrative medical report rate the different parts of the body which a [c]laimant is complaining injury to whether or not he felt he has any impairment and whether or not it is job related." Claimant does not cite any language in rule 20 which supports this statement. Rule 20 found in the 1987 supplement to the Oklahoma Statutes is the applicable law. *See Gray v. Gray*, 459 P.2d 181, 186 (Okla.1969). Subsection h requires that the medical report, when applicable, contain "[t]he physician's evaluation of the extent of any impairment with a clear indication as to whether it is temporary or permanent in nature."

Dr. Fielding stated: "This man has no impairment. He has no impairment...." Dr. Hallford stated that the claimant "has incurred no apparent permanent disability." These statements are the physician's evaluation of the extent of any impairment. If there is no impairment, the requirement that the physician give "a clear indication as to whether [the impairment] is temporary or permanent in nature" would not be applicable. Both Dr. Fielding's and Dr. Hallford's reports complied with rule 20.

The Court of Appeals correctly found that there was competent evidence on which the Workers' Compensation Court based its decision.

CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS' OPINION VACATED; ORDER OF WORKERS' COMPENSATION COURT SUSTAINED.

OPALA, C.J., and LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs in judgment.

KAUGER, J., concurs in result.