**SPECIAL INDEMNITY FUND, Petitioner,**

v.

**Troy F. CHOATE, and the Workers' Compensation Court, Respondents.**

No. 69981.

Supreme Court of Oklahoma.

Feb. 23, 1993.

John R. Schneider, Jim Seasholtz, Oklahoma City, for petitioner.

Richard A. Bell, Norman, for respondent Choate.

LAVENDER, Vice Chief Justice.

We hold in this case a trial tribunal of the Oklahoma Workers' Compensation Court (OWCC) had jurisdiction over a claim brought by, Troy F. Choate (Choate) against the Special Indemnity Fund (Fund) to combine two cumulative trauma injuries against it for a material increase, the two injuries were combinable against the Fund and no reversible error occurred because the trial tribunal did not expressly determine a statute of limitation defense. However, we hold the trial tribunal erred by sustaining an objection to Fund's medical evidence. Thus, we must vacate the order awarding a material increase against the Fund and remand to the trial tribunal for reconsideration. We also hold the Court of Appeals erred in ruling Choate's medical evidence was not competent for failure to comply with the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides).[1]

## I. FACTS AND PROCEDURAL HISTORY [2]

On October 16, 1985 Choate filed a claim for respiratory injury against his employer.

---

1. American Medical Association Guides to the Evaluation of Permanent Impairment (2d ed. 1984).

2. The facts and procedural history are taken from the record provided by Fund in support of its appeal. The record consists of the OWCC file in Case No. 85–20537–A, Troy F. Choate v.

Special Indemnity Fund. That case was initiated by Choate against his employer, Tosco Oil Co., in regard to the respiratory injury. Although we have not been provided with the record in the hearing impairment case against the employer, a transcript submitted as part of the appellate record shows both the respiratory and hearing loss cases were heard against the

In the form filed Choate answered "yes" to the question of whether he was a physically impaired person, claiming a hearing loss from 1983. A hearing loss case was also filed about the same time.[3] The two matters were heard together and resulted in separate awards against the employer of 15% permanent partial disability to the body as a whole due to injury to the respiratory system and 15% binaural hearing loss.[4] Both orders of the trial tribunal reflect the last date of exposure to noise or respiratory irritants was on August 28, 1983. The transcript of the hearing between Choate and his employer reflects a statute of limitation defense was raised by employer and the two orders awarding compensation show the trial tribunal ruled neither claim was barred by the statute of limitation.

In regard to the statute of limitation defense litigated in the context of the separate claims against the employer the evidence was conflicting. On the one hand evidence offered by Choate was to the effect he did not become aware problems with his respiratory system and hearing were permanent or work related until a few weeks prior to seeing his present attorney and being examined by a physician retained by his attorney. The record reflects the examination by this physician took place on September 26, 1985. On the other hand evidence was presented by employer to the effect Choate was aware or should have been aware his problems were work related at a much earlier time through purported knowledge garnered through workplace physical examinations. As we view the evidence submitted by the employer it is somewhat equivocal as to just what information was actually imparted to Choate concerning his condition(s) or their work-relatedness. Obviously, the trial tribunal who tried the matters against the employer viewed the evidence similarly because he resolved the factual dispute against the employer by ruling the claims were not barred by the applicable statute of limitation.

On March 11, 1987 Choate filed a claim against Fund asserting he was a physically impaired person by virtue of a 1983 hearing loss at the time of his latest injury to the respiratory system. The date of last exposure was asserted to be August 25, 1983. Fund's answer raised the following pertinent defenses: 1) denial of physically impaired person status, 2) if Choate was physically impaired, the two injuries were not combinable against it, 3) combination of the two injuries resulted in no material increase in impairment, and 4) a statute of limitation defense.

At the hearing on November 2, 1987 Fund stipulated to the two previous awards against the employer and the relevant percentages of the awards. It also raised the

---

employer at the same time before a trial judge of the OWCC on August 4, 1986. The record contains the exhibits and certain depositions admitted at this hearing. One of the depositions (the medical expert for Choate) and certain materials contained in the OWCC file in Case No. 85–20537–A reflect the case number of the hearing impairment matter was 85–20536–Y. The appellate record also contains a transcript of the hearing involving Fund dated November 2, 1987. This latter hearing was conducted by a different trial judge. Although we have not been provided the complete record in Case No. 85–20536–Y, Fund has attached to an appellate brief a copy of an August 29, 1986 OWCC order awarding a 15% binaural hearing loss in favor of Choate against his employer. Normally, a party may not supplement the appellate record with and we will not consider material which is not part of the assembled record certified by the clerk of the trial tribunal. *Chamberlin v. Chamberlin*, 720 P.2d 721, 723–724 (Okl.1986). However, to the extent the attached order reflects the

fact the hearing loss case was actually litigated against the employer resulting in the 15% binaural hearing impairment award and that it shows on its face a statute of limitation defense was decided adversely to the employer we consider the order as an admission by Fund of these matters. Such use by us in this appeal is consistent with our previous jurisprudence which allows admissions in an appellate brief to be acceptable as material supplementing the record. *Deffenbaugh v. Hudson*, 791 P.2d 84, 85 f.n. 3 (Okl.1990).

3. Although we do not definitively know the date the hearing loss claim was filed against the employer, in that the numerical sequence of the case numbers are only one number apart (note 2, *supra* ) we assume the two claims were filed close in time, presumably on the same day.

4. Neither party disputes these two orders have become final.

limitation defense allegedly based on the fact the claim was filed more than two years after last exposure.[5] Fund also denied previously impaired person status, asserting the two injuries occurred simultaneously.

Choate was the sole live witness. He testified he was fifty-eight years old and to continuing hearing and respiratory problems. He stated he worked on his small farm, he was otherwise not gainfully employed and although he had applied for other employment he had obtained none. No evidence was presented concerning when Choate was aware or should have been aware of a causal connection between his injuries and the workplace.

Choate offered the medical report of Dr. G.C.M., which was admitted over a probative value objection. The basis of the objection was the report "fails to state an opinion as to what [Choate's] current state of impairment might be". Fund offered the report of Dr. L.Y. over probative value and competency objections based on the assertion the report did not indicate pulmonary function tests were conducted. The report was admitted subject to the objection(s), which were taken under advisement.

Dr. G.C.M. opined the earlier 15% impairment ratings to the respiratory system and hearing were "fair and reasonable at the time" and combination of the two resulted in a 15% material increase in impairment. Dr. G.C.M. also opined the "first injury [ ] was to the lungs and upper respiratory system" and the "second injury [ ] was to [the] ears". Dr. L.Y. opined Choate sustained 15% permanent partial disability to the body as a whole due to his "first injury" to the lungs and upper respiratory system and "[d]ue to the latest injury" Choate sustained a 15% binaural hearing loss. He, however, believed combination of

the two resulted in a 24% permanent partial impairment to the body as a whole, which represented no material increase in impairment to that already awarded against the employer.

In his order the trial tribunal awarded a 15% material increase in permanent partial impairment to the body as a whole. Even though both doctors' reports opined the first injury was to the respiratory system, the trial tribunal ruled Choate was a physically impaired person by virtue of the hearing loss. He also sustained the competency and probative value objections to Fund's medical report.

On appeal Fund raised six issues: 1) because of the purported fact the two injuries occurred simultaneously Choate did not meet the statutory requirements for filing a claim against Fund, which mandated one of the injuries be subsequent to the other, 2) this failure to meet the statutory requirements deprived the OWCC of jurisdiction and deprived Fund of due process because an award was entered without jurisdiction, 3) the OWCC was required to make findings establishing the dates of the two impairments and in the absence of such findings, failed to establish its jurisdiction, 4) Choate improperly split his claim against his employer and the two injuries should have been combined against the employer, 5) the order of the trial tribunal was fatally defective because there was no ruling on the limitation defense, and 6) error occurred in sustaining the objection to Fund's medical evidence.[6]

In its opinion the Court of Appeals recited the parties stipulated the two injuries occurred simultaneously. Our review of the record shows no such stipulation was made. The Court of Appeals then apparently determined simultaneous injuries were combinable against the Fund, citing 85 O.S.Supp.1988, § 171 in a footnote,

---

**5.** As we will demonstrate in PART IV, Fund mistakenly believes the statute of limitation began to run from the last date of exposure rather than the date Choate was either aware or should have been aware of the causal connection between his respiratory injury or hearing loss and the workplace.

**6.** Choate argues some of these defenses were waived either by not being contained in the Petition in Error or not raised below. In our view, none of the defenses were waived. Either they are jurisdictional in nature or, the ones which are not, were adequately raised below and in the Petition in Error.

which embodied a 1986 amendment to the definition of physically impaired person. It otherwise did not rule on the issues raised by Fund. Instead, it determined *Choate's* medical evidence was incompetent because it did not conform to the Combined Values Chart of the AMA Guides and that Choate had a 28% impairment as a result of combining the two injuries using said Chart.[7] The Court of Appeals did so even though no party raised an issue concerning the use or non-use of the Combined Values Chart nor an appellate issue concerning the competency or probative value of Choate's medical evidence. Choate petitioned for certiorari which we have previously granted.

## II. SIMULTANEOUS INJURIES WERE NOT COMBINABLE AGAINST THE FUND UNDER THE EFFECTIVE LAW

 Whether a claimant is a physically impaired person under the Special Indemnity Fund Act (Act), 85 O.S.1981, §§ 171–176, as amended, fixes the jurisdiction of the OWCC in Fund cases. *See Grammar v. State Industrial Court*, 435 P.2d 101, 104 (Okl.1967). Whether a worker is correctly judged to be a physically impaired person within the Act is, thus, a jurisdictional question and we are neither bound nor concluded by the determination of the trial tribunal. *Special Indemnity Fund v. Stoveall*, 368 P.2d 847, 848 (Okl. 1962).[8] As we view the first three issues raised by Fund they are related and question the jurisdiction of the OWCC. The *legal* issue posited is controlled by answer-

ing the question of whether separately adjudicated simultaneous injuries could be combined to support an award against the Fund at the time these particular injuries occurred or stated another way, whether a claimant could be considered a physically impaired person under pertinent sections of the Act when the situation involved only simultaneously occurring injuries.

On this date we have issued an opinion in *Special Indemnity Fund v. Archer*, 847 P.2d 791 (Okl.1993). *Archer* determined the statutes in effect in 1984 did not allow combination of separately adjudicated simultaneous injuries so as to support an award for material increase against the Fund. We held under 85 O.S.1981, §§ 171 and 172 [9] for Fund liability there was a requirement of a *pre-existing* disability and a *subsequent* injury which could be combined therewith. We also determined allowing combination of separately adjudicated, but simultaneous injuries against the Fund did not further the primary legislative purpose behind the Act, recognized by us for over forty years, to wit: to foster employment or retention of previously impaired individuals.

The injuries here, under our rationale in *Archer*, having been incurred under the 1981 versions of §§ 171 and 172 and having been fully litigated against the employer in August 1986, are controlled by the same 1981 statutes applicable in *Archer*. The 1986 legislative amendment to § 171 was, accordingly, not applicable in this case just as it was not in *Archer*.[10] Thus, *if* the current injuries occurred simultaneously they could not be combined against the

---

**7.** The Combined Values Chart is found at pp. 240–242 of the 1984 AMA Guides.

**8.** The jurisdictional nature of physically impaired status and the treatment we have given it can be compared to the analogous question of a claimant's status as an employee in cases brought for benefits against a purported employer. *Mahan v. NTC of America*, 832 P.2d 805 (Okl.1992). In *Mahan* we held the question of whether or not a claimant is an employee has long been recognized as a jurisdictional fact and we will review the record to make an independent finding on the issue. *Id.* at 806.

**9.** For the text of these statutes refer to *Archer*. For the text of the 1986 amendment to § 171 [85

O.S.Supp.1986, § 171], erroneously relied on by the Court of Appeals, also refer to our opinion in *Archer*.

**10.** The 1986 amendment was not effective until November 1, 1986 and, as we made clear in *Archer*, had no applicability to injuries occurring prior to that date under well settled law that the right to compensation and the obligation to pay benefits are fixed by the law in effect at the time of injury. *See e.g. Knott v. Halliburton Services*, 752 P.2d 812, 813 (Okl. 1988); *Special Indemnity Fund v. Michaud*, 345 P.2d 891 (Okl.1959) (Syllabus by the Court).

Fund.[11] The question then remains whether the injuries occurred simultaneously or whether the evidence supports the view, as the trial tribunal ruled, one was subsequent to the other.

## II(A): THE EVIDENCE SUPPORTS THE DECISION ONE INJURY OCCURRED SUBSEQUENT TO THE OTHER

The OWCC has no authority to enter an award against the Fund until it is shown by competent proof the employee is a physically impaired person. *Special Indemnity Fund v. Hunt,* 200 Okl. 1, 190 P.2d 795, 798 (1948). The evidence relating to this jurisdictional question will be weighed by us and an independent determination made as to whether adequate proof exists to show physically impaired status under the Act. *Id.* 190 P.2d at 798–799. We have also said, however, in the absence of a request for more specific findings as to the nature and extent of the impairment which makes a worker a physically impaired person, a general finding of such status is sufficient. *Id.* at 798.

The trial tribunal generally found Choate was physically impaired by virtue of a 1983 binaural hearing loss of 15%. No request for more specific findings was made by Fund to the trial tribunal. We, thus, initially, determine Fund's claim the order of the trial tribunal was invalid because it did not specifically make findings concerning the *exact* dates of the two injuries does not render the order fatally defective.[12] However, in that our duty is to independently weigh the evidence concerning physically impaired status we must still determine whether the jurisdictional prerequisite is sufficiently shown by this record.

As set out in PART I both doctors opined the respiratory injury occurred first and the hearing loss second. In our view, in light of the uncontroverted medical evidence one injury occurred subsequent to the other there is simply no factual basis to support Fund's argument the two injuries occurred simultaneously. Fund bases its argument on the fact the record indicates the last date of exposure to trauma in the workplace was August 23, 1983. The last date of exposure, as Fund seems to believe, is not synonymous with the date of injury for purposes of Fund liability. As we will explain in PART IV the last date of exposure, *now* a relevant date as to when the statute of limitation begins to run in cumulative trauma injury cases, is not and was not conclusive as to the date these two injuries may have occurred for purposes of determining Fund liability. Suffice it to say at the present time both doctors opined one injury occurred first and the other second. We have been presented nothing by Fund, other than its erroneous assumption the last date of exposure is the date of injury, to support its argument the injuries occurred simultaneously. Such erroneous assumption is obviously insufficient to rebut the unequivocal medical evidence that the respiratory injury occurred first and the hearing loss second. The requirement that one injury occur subsequent to the other has, thus, been met on this record and we have been provided no rationale to deviate from the undisputed medical evidence presented on this point. Accordingly, the evidence supports the view Choate was a physically impaired person under the Act by virtue of a respiratory injury at the time of his work induced hearing loss.[13]

11. The injuries in *Archer* admittedly occurred simultaneously and such admission on behalf of the worker there necessitated our decision the two injuries were not combinable against the Fund in view of our *legal* determination separately adjudicated simultaneously occurring injuries were not so combinable.

12. We also note it would seem particularly difficult to pin-point an *exact* date of injury in cumulative trauma cases given the fact the accidental injury involved results from the cumulative effect of trauma, or casualty, occurring at different times and over an extended period.

See e.g. *Munsingwear, Inc. v. Tullis,* 557 P.2d 899, 903 (Okl.1976). However, as determined in *Munsingwear* this does not mean a date for statute of limitation purposes cannot be arrived at, something we will explain in more detail in PART IV.

13. We note that even with the uncontroverted medical evidence the trial tribunal for some unexplained reason found the hearing loss was the initial injury and rendered Choate a physically impaired person. Even though this determination was erroneous, given the undisputed medical evidence, we believe any error in such

## III: THE TWO INJURIES COULD NOT BE COMBINED AGAINST THE EMPLOYER BUT THEY COULD BE COMBINED AGAINST THE FUND

Fund argues Choate improperly split his claim against the employer. It asserts the injuries were required to be combined into one disability to the whole person against the employer and this purported requirement would obviate combination against the Fund. The argument is without merit.

■ An injury to a specific scheduled member subject to the particular schedule set by the Legislature at 85 O.S.1981, § 22(3) may not generally be combined against the employer with injury to a part of the body subject to the other cases provisions of § 22(3) in permanent partial impairment cases. *Stoldt Builders, Inc. v. Thomas*, 393 P.2d 875, 876–877 (Okl.1964); *Transcon Lines v. Brotherton*, 438 P.2d 935, 937 (Okl.1967). This is so based on § 22(3) which provides compensation for scheduled injuries as per the schedule set by the Legislature is in lieu of all other compensation, except for medical attention and rehabilitative services.[14]

Although a hearing loss was not always classified as a scheduled injury [*Special Indemnity Fund v. Stone*, 201 Okl. 465, 207 P.2d 263, 266 (1949)], a 1955 legislative amendment to § 22 [85 O.S.Supp.1955, § 22(3)], added it as a scheduled injury. *Special Indemnity Fund v. Michaud*, 345 P.2d 891, 893 (Okl.1959). 85 O.S.1981, § 22(3) continued hearing loss as a scheduled injury and it has remained so through various legislative amendments to § 22. 85 O.S.Supp.1985, § 22; 85 O.S.Supp.1986, § 22; 85 O.S.Supp.1987, § 22; 85 O.S.1991, § 22; and 85 O.S.Supp.1992, § 22.

■ In contrast, a respiratory injury is not a scheduled one under § 22(3), but it falls under the other cases provisions of the last paragraph of § 22(3). In that Fund has failed to show any reason to depart from the holdings of *Stoldt* and *Transcon, supra*, that scheduled and unscheduled injuries may not be combined against the employer, the assertion Choate improperly split his claim against the employer is, accordingly, without merit. The two injuries simply could not have been combined as Fund argues.

■ A different approach, however, has been applied concerning whether scheduled and unscheduled injuries may be combined against the Fund so as to support an award for increased disability to the body as a whole. In *Tannehill v. Special Indemnity Fund*, 538 P.2d 590 (Okl.1975), we determined a 1971 amendment to § 171 of the Act was intended to allow combination against the Fund of scheduled and unscheduled injuries in permanent partial impairment cases.[15] *Id.* at 592–593. The pertinent language of the 1971 law was carried forward to the 1981 addition and we determine under that law the injuries here were subject to combination into impairment to the body as a whole against the Fund.[16]

---

regard was harmless in that we can discern no prejudice to Fund by virtue of the erroneous determination and the Fund suggests none. Errors which are not prejudicial to the complaining party do not furnish grounds for reversal on appeal. *Texas Oklahoma Express v. Sorenson*, 652 P.2d 285 (Okl.1982).

**14.** 85 O.S.1981, § 22(3) provides in pertinent part in relation to scheduled injury losses, "[t]he compensation for the foregoing specific injuries shall be in lieu of all other compensation except the benefits provided in section 14 of this title and section 19 of this act". Section 14 of the title refers to 85 O.S.1981, § 14 and it concerns expenses for medical attention. Section 19 of the act refers to 85 O.S.1981, § 16 and concerns rehabilitation and job placement services. The pertinent part of 85 O.S.Supp.1992, § 22(3) continues the exclusivity of compensation for scheduled injuries, except for medical attention and rehabilitative services.

**15.** Although the determination made in *Tannehill* might be considered dicta in that the facts present in the case involved the combination against the Fund of two unscheduled injuries, we believe it correctly determined the intent of the Legislature.

**16.** We express no opinion whether the instant combination would still be viable under a 1991 legislative amendment embodied in 85 O.S.1991, § 172(A), where the following language was inserted: "[o]nly disability due to an injury to the body as a whole shall be combinable with a prior body disability, except that disability to a major member may be combined with disability to the body as a whole." For the most updated version of § 172 refer to 85 O.S.Supp.1992,

## IV: NO FATAL DEFECT OCCURRED BY FAILURE OF THE TRIAL TRIBUNAL TO RULE ON THE FUND'S STATUTE OF LIMITATION DEFENSE

Fund's argument is the order of the trial tribunal is fatally defective because it does not contain a ruling on the limitation defense. It requests remand for findings and ruling on the defense. The argument is based on the general rule the OWCC normally must make specific findings of ultimate facts responsive to the issues, as well as conclusions of law upon which the order is based. *Acme Construction Co. v. Carr*, 513 P.2d 113, 115 (Okl.1973). It asserts without a specific ruling the order of the trial tribunal is too indefinite and uncertain for judicial interpretation because it does not know whether the trial tribunal did not think the statute of limitation had run, whether the trial tribunal did not think he had authority to rule on the issue or whether he simply forgot the defense was raised. We reject Fund's assertions.

 A statute of limitation defense is not independently reviewed by us or considered a jurisdictional question. *Munsingwear, Inc. v. Tullis*, 557 P.2d 899, 901–902 (Okl.1976).[17] It is treated as a true affirmative defense and if a trial tribunal factual determination on the issue is reasonably supported by the evidence it will not be disturbed on review. *Id.* at 902. As an affirmative defense the burden of proof was on the Fund to show the claim against it was time-barred by the applicable statute of limitation. *See Armco, Inc. v. Holcomb*, 694 P.2d 937, 939 (Okl.1985); *Bennett v. Scrivner, Inc.*, 694 P.2d 932, 935 (Okl. 1985). In our view, because Fund utterly failed to carry its burden to show an applicable limitation period barred the instant claim and a previous ruling had been made against a limitation defense when Choate litigated his claims against the employer we do not believe the failure of the trial tribunal to specifically rule on the defense presents an error of reversible dimension.

We have consistently held the applicable limitation period on a claim against the Fund is that applicable to the employer and is measured from the date of subsequent or last injury. *Reynolds v. Special Indemnity Fund*, 725 P.2d 1265, 1269 (Okl.1986); *Special Indemnity Fund v. Mickey*, 563 P.2d 123, 125 (Okl.1977); *Special Indemnity Fund v. Hulse*, 441 P.2d 366, 369 (Okl. 1967). Under these holdings, the claims against the employer or Fund were initially controlled by 85 O.S.1981, § 43, the statute in effect at the time of both injuries. The 1981 version of § 43 provided a one year limitation period from the date of injury. Further, because we have cumulative trauma induced injuries, our case law holds the one year began to run from the date Choate was either aware or should have been aware of the causal connection between his injuries and the workplace. *Marley Cooling Tower Co. v. Cooper*, 814 P.2d 472, 474 (Okl.1991); *Munsingwear, Inc. v. Tullis, supra*, 557 P.2d at 903.

Instead of placing *any* reliance on the *applicable* limitation period, at page 14 of its February 8, 1988 brief in chief, Fund quotes from its argument made to the trial tribunal which shows it erroneously believes the claim is barred because Choate did not file any claim within two years from the date of last exposure in the workplace. Reliance is apparently placed on a statutory change in the limitation period in regard to cumulative trauma injury cases embodied in 85 O.S.Supp.1985, § 43(A), effective November 1, 1985, which allowed claims caused by cumulative trauma to be filed within two years of last exposure. In that the last exposure date was in August

§ 172. The question under the foregoing language would be where would a hearing loss fit in, if anywhere. Recently, we determined for purposes of 85 O.S.1991, § 171, the term major member is a hand, an arm, a foot, or a leg. *Special Indemnity Fund v. Figgins*, 831 P.2d 1379, 1382 (Okl.1992).

17. Prior to *Munsingwear* we had held a statute of limitation question was jurisdictional and would be independently reviewed by us. *Roe v. Jones & Spicer, Inc.*, 196 Okl. 582, 167 P.2d 70 (1946); *S.W. Anthony Estate v. Young*, 208 Okl. 289, 255 P.2d 496 (1953). *Munsingwear* expressly overruled *Roe* and other cases which had held the limitation issue was jurisdictional in nature. 557 P.2d at 902.

1983, *if* the 1985 amendment was retroactively applied the claim(s) would, indeed, be barred having not been filed until October 1985. However, the date of last exposure is *not* the relevant date under the applicable law.

As recited in PART I the *employer* did attempt to show the claims were barred when brought in October 1985 by virtue of the awareness doctrine enunciated in *Munsingwear, supra*. At the later hearing involving Fund, however, it put on *no* evidence as to when Choate was aware or should have been aware of the causal connection between his injuries and the workplace. It exclusively relied on its erroneous belief concerning the last exposure date.

As also noted in PART I the evidence concerning Choate's awareness was conflicting. Evidence existed showing Choate did not become aware of the causal connection with the workplace until shortly before he was sent to a doctor by his current attorney. The examination by this doctor occurred in September 1985. Fund has never disputed these facts contained in the record *it* has provided to this Court.[18] Thus, although we cannot pinpoint the exact date the statute of limitation began to run against the claims the record would support a finding it was sometime in the middle of 1985, i.e. shortly before the examination of September 1985.

If, in fact, the awareness doctrine of *Munsingwear* was not triggered until the middle of 1985, Choate's claims would not have been time-barred when the 1985 amendment to § 43 took effect because one year had not elapsed between his awareness and the effective date of the 1985 amendment to § 43 on November 1, 1985. Under the teaching of *Marley Cooling Tower, Inc., supra,* Choate would then have had an additional two years after November 1, 1985 to file his claim against either the employer or the Fund. 814 P.2d at 475–476.[19] Thus, evidence exists that Choate's claim was timely when filed against the Fund in March of 1987.

As further noted in PART I, the two orders against the employer that Fund itself has provided to us reflect the employer's limitation defense was denied. Although this determination may not have been binding or conclusive on the Fund, it was nevertheless admissible against it to prove prima facie the fact of its rendition and the legal consequences flowing therefrom in the absence of evidence to the contrary. *Special Indemnity Fund v. Acuff,* 383 P.2d 630, 633–634 (Okl.1963). Fund put on no contrary evidence nor has it ever contested the accuracy of the ruling in relation to the employer based on an appropriate analysis concerning the awareness doctrine and the effect of the 1985 amendment to § 43. Instead, it has exclusively relied on the erroneous assumption

18. The only evidence relevant to the limitation defense possibly before the trial tribunal had been presented earlier at the hearing involving the employer. Although neither Fund or Choate referred to the transcript of the earlier hearing involving the employer or depositions admitted there, the record provided to us by Fund shows by the OWCC file stamp date on the earlier transcript it was available to the trial judge who tried the case brought against the Fund. The earlier transcript shows a file stamp date of September 11, 1986 and the hearing against Fund was held in November 1987.

19. The basis of *Marley Cooling Tower, Inc.* is that statutes of limitation are generally viewed as procedural, rather than substantive and no rights vest in them until a claim becomes time-barred by a statute which governs it. 814 P.2d at 475. Insofar as a statute of limitation effects rights of action in existence when it becomes

effective, in the absence of a contrary provision, the new limitation period covering a claim begins to effect the claim when it is first subjected to the new statute's operation. *Id.* Thus, we ruled in *Marley Cooling Tower, Inc.* where a claim had accrued through the awareness doctrine under 85 O.S.1981, § 43, but the one year period of that statute had not expired prior to the effective date of the 1985 amendment the worker involved had, at a minimum, an additional two years after the effective date to file a claim. *Id.* at 475–476. We had earlier ruled in *B.F. Goodrich Company v. Williams,* 755 P.2d 676 (Okl.1988), the 1985 amendment to § 43 would not be retroactively applied to provide a two year limitation period from last trauma or exposure to bar a claim involving cumulative trauma where a claimant's last date of employment was in December 1983, but he had no awareness of injury and the causal link with employment until 1986.

the matter was controlled by a limitation period which started to run from the date of last exposure in the workplace.

In view of this state of the record, we do not believe the trial tribunal's failure to make a specific ruling on the limitation defense, which had already been adjudicated adversely to the employer, constitutes a fatal defect or presents an error of reversible magnitude. We further do not believe it renders the order of the lower tribunal too indefinite or uncertain for judicial interpretation.

## V. THE OBJECTION TO FUND'S MEDICAL EVIDENCE WAS ERRONEOUSLY SUSTAINED

At trial Choate articulated his objection to the medical report of Dr. L.Y. as being based on the fact the report did not indicate pulmonary function tests were conducted as to the respiratory injury. It was said to be both a competency and probative value objection. In effect the objection seemed to be the report failed to comply with the AMA Guides because the tests were not conducted.[20] No other articulation of objection was made. In his order the trial tribunal specifically ruled the objection was granted on both probative value and competency grounds. In our view, sustaining the objection on both probative value and competency grounds was erroneous and shows the trial tribunal failed to consider the evidence.

■■■ We have delineated the distinction between an objection based on competency and one made on grounds of probative value. *Whitener v. South Central Solid Waste Authority,* 773 P.2d 1248, 1249 f.n. 1 (Okl.1989). An objection to competency challenges the legal admissibility of a medical report; an objection to probative value challenges whether, once admitted, the report is probative of the elements it seeks to establish. *Id.* In our view, the objection made here, one sustained by the trial court on both grounds, was not truly to the report's admissibility, but only to its probative value and the articulated ground, as a matter of law, did not rob the report of all probative weight or render it inadmissible, as the trial tribunal apparently ruled. The trial tribunal should not have sustained the objection, but should have considered the report, giving it whatever weight he thought it deserved.[21]

At trial Choate's objection *seemed* to be pulmonary function tests in accordance with the AMA Guides had to be conducted. However, on appeal he only argues if a physician says he has complied with the AMA Guides in his report he must do so completely. We first deal with whether pulmonary function tests were required by either physician.[22]

■■■ We have ruled in a case involving Fund a claimant with a previously adjudicated disability enjoys a rebuttable presumption the degree of disability has not changed since the last adjudication. *Special Indemnity Fund v. Washburn,* 722 P.2d 1204, 1208 (Okl.1986). In other words, in the absence of sufficient evidence

---

**20.** Pulmonary function or ventilatory function measurements are a criterion in the rating of certain respiratory impairment used in the American Medical Association Guides to the Evaluation of Permanent Impairment, Ch. 3, The Respiratory System, pp. 85–101 (2d ed. 1984). Their use has been the subject of extensive litigation and review by us. *See e.g. Orrell v. B.F. Goodrich,* 787 P.2d 848 (Okl.1990); *Whitener v. South Central Solid Waste Authority,* 773 P.2d 1248 (Okl.1989). We note Fund initially argues Choate's objection was not specific enough to warrant a favorable ruling. Although we rule the objection should have been denied, Fund is incorrect it was not sufficiently specific. The objection hardly could have been more specific. It was based on the specific basis the report of Dr. L.Y. failed to conduct pulmonary

function tests, which Choate argued were compulsory.

**21.** Given the language used in sustaining the objection and our delineation in *Whitener* of the distinction between a competency and probative value objection we can conclude nothing other than the trial tribunal held the evidence inadmissible. The language used by the trial tribunal in his order concerning sustaining the objection was as follows: "[t]hat [Choate's] probative value and competency objections to [Fund's] medical of Dr. L[.] Y[.] are hereby sustained."

**22.** We answer this question because Fund argues on appeal its medical report did not have to comply with the AMA Guides.

to the contrary it is presumed the percentage of permanent disability previously adjudicated by the OWCC has not changed. *Id.* at 1207–1208. Here both doctors agreed 15% impairment to the body as a whole, the percentage previously awarded against the employer for the respiratory injury, was appropriate. No party, including Choate, challenged this previously adjudicated percentage nor offered contrary evidence. The disagreement of the doctors went solely to whether combination of the two injuries resulted in a material increase in impairment. Accordingly, under *Washburn*, this amount was entitled to be relied on, not only by the trial tribunal, but the parties' medical experts in their current evaluations on whether combination of the two injuries resulted in a material increase in impairment. To rule as Choate would have us would emasculate use of the presumption approved in *Washburn*.[23]

As noted above, Choate argues on appeal the trial tribunal action in excluding the evidence was proper because Dr. L.Y. stated in his report he used the AMA Guides in his examination and opinion and when a doctor so states his report must completely adhere to the AMA Guides.[24] We can conceive of no rationale requiring complete exclusion of medical evidence on this ground. At most it would go to the credibility of the doctor. Such an apparent inconsistent statement as that contained in the report might merely exhibit some type of oversight in drafting the report. Further, given the fact both doctors *agreed* on the percentage of impairment for the respiratory injury, which was identical to that

previously adjudicated and allowed to be relied on by all parties (and the trial tribunal) we are hard-pressed to conclude exclusion or complete non-consideration of the evidence was required. Thus, the trial tribunal erred in excluding the evidence.

## VI. THE COURT OF APPEALS ERRED IN HOLDING CHOATE'S EVIDENCE NOT COMPETENT AND IN MODIFYING THE AWARD USING THE AMA GUIDES

Although neither party raised the issue either below or on appeal the Court of Appeals held the report of Dr. G.C.M. incompetent because he did not use the Combined Values Chart of the AMA Guides.[25] The Court of Appeals erred in such determination because that Chart is not the appropriate vehicle to measure a material increase in permanent partial impairment in cases brought against the Fund.

 The primary goal of statutory construction is to ascertain and arrive at the intention of the Legislature. *Ledbetter v. Alcoholic Beverage Laws Enforcement Commission*, 764 P.2d 172, 179 (Okl.1988). Further, a construction which would lead to an absurdity must be avoided and a rational construction should be given if the statutory scheme fairly permits. *Id.* A review of relevant statutes leads to the conclusion the Legislature never intended the Combined Values Chart of the AMA Guides to be used in cases involving a material increase in impairment brought against the Fund.

**23.** We wish to point out we do not rule that where a party seeks to challenge a percentage of disability previously adjudicated that is statutorily required to be arrived at by use of the AMA Guides that those Guides do not have to be used. In our view, they would be required to be used. However, no party challenged the previously adjudicated percentage and that percentage was entitled to a presumption of correctness.

**24.** Choate points to the second to last paragraph of the report of Dr. L.Y. which provides in full: "[m]y examination and opinion are in substantial compliance with the American Medical Association Guidelines to the Evaluation of Permanent Impairment except for scheduled members and impairment not covered by the Guidelines".

**25.** On certiorari Choate initially complains the Court of Appeals erred because any objection to the competency of his medical evidence was waived by not being raised below. *See Whitener v. South Central Solid Waste Authority*, 773 P.2d 1248 (Okl.1989). To the extent the Court of Appeals meant the exhibit was inadmissible Choate is correct any objection to admissibility was waived by Fund's failure to raise either below or on appeal any such objection. In the interest of judicial efficiency we, however, review the Court of Appeals' decision to mandate compliance with the Combined Values Chart of the AMA Guides in that we are remanding for reconsideration.

As stated in PART III, Choate's hearing loss was subject to a specific schedule of compensation set by the Legislature in 85 O.S.1981, § 22(3). Further, at the time the hearing loss was incurred both the statutes of this State [85 O.S.1981, § 3(11) and 85 O.S.1981, § 22(3)] and the Rules of the OWCC did not mandate evaluation of hearing loss be conducted in conformance to the AMA Guides. Rule 37 of the OWCC Rules, 85 O.S.1981, Ch. 4, App., provided a detailed methodology for evaluating hearing loss which specifically recognized the AMA Guides were not applicable. After the recognition hearing impairment is a scheduled member loss, Rule 37 provided in the last sentence of the second paragraph thereof as follows: "[t]herefore, any computation or conversion either of monaural or binaural hearing impairment to the whole man (as done by the 'Guides') is clearly incorrect according to Oklahoma law". Further, even the methodology provided by Rule 37 was not mandatory, the rule providing in the last paragraph: "[a] physician may deviate from this method of evaluation or may use any other recognized method of evaluation PROVIDED that he fully explains the basis of his deviation or the method of his evaluation".[26]

The Combined Values Chart of the AMA Guides require before use of the Charts each impairment is evaluated separately and then converted to impairment to the whole person. The preface to the AMA Guides at page viii provides in pertinent part as follows:

> Generally, when a single permanent impairment is present, the percent of impairment may be read directly from the text, or it can be related to a part of the body or to the "whole person" by referring to the appropriate tables. When two or more impairments exist, the value of each impairment is determined separately and related to the "whole person," using the Combined Values Chart. The Combined Values Chart is based on the principle that each impairment acts not on the whole person, but on the unimpaired portion that remains after other impairments, alone or in combination, have been taken into account. The final value, the "impairment of the whole person," is independent of the order in which the impairment values are combined.[27]

In explaining use of the Chart the AMA Guides at page 240 provides an example of its use. If separate impairment ratings of 35% and 20% are combined use of the Chart

---

**26.** We note 85 O.S.Supp.1987, § 22(3), in relation to evaluating deafness for the first time required use of the AMA Guides. Use of the appropriate AMA Guides, with certain exemptions for the race or ethnic origin provisions thereof, continue to be required today. 85 O.S.Supp.1992, § 22(3). The OWCC rule in relation to hearing impairment was also changed in 1987 to require use of the AMA Guides, but still did not allow for a binaural hearing loss to be converted to a whole person rating. 85 O.S.Supp.1987, Ch. 4, App., Rule 32. The present rule of the OWCC generally provides hearing loss where the last exposure occurred on or after June 1, 1987 shall be evaluated according to the AMA Guides, but for loss occurring prior to that date the 1981 OWCC Rule 37 would be used. 85 O.S.1991, Ch. 4, App., Rule 32. The current Rule 32 continues to provide binaural hearing loss shall not be converted to a whole person rating.

**27.** It is clear the percentages used in the Combined Values Chart of the AMA Guides are required to be expressed in terms of impairment to the whole person. The 1977 American Medical Association Guides to the Evaluation of Per-

manent Impairment (1977 ed.), specifically provides in the Preface at page iv as follows:

> "When two or more impairments are involved, however, the value of each impairment must be ascertained and *transposed to a common denominator, such as the whole man.* Thereafter, these values must be combined rather than added. A Combined Values Chart is provided by which any combination of impairments may be easily assessed. The method generally used to combine various impairments is based on the principle that each impairment acts not on the whole part but on the portion which remains after the preceding impairment has acted. For purposes of computation, the source and chronology of the impairment values are immaterial.
> After the values of all impairments involved have been computed and transposed *to a common denominator,* the final impairment value, whether the result of a single or combined impairments, should be expressed in terms of the nearest 5%. (emphasis added)

A review of the Charts from both the 1977 and 1984 editions of the AMA Guides reveal no change has been made in the formula used by the Charts to combine impairments.

would result in a 48% impairment to the whole person, in other words an impairment rating of less than the sum of the two parts.

The Court of Appeals held the binaural hearing loss was a scheduled injury and was subject to the schedule of compensation set forth at 85 O.S.1981, § 22(3) and under Rule 37 the 15% impairment rating could not be converted into a value representing impairment to the whole person.[28] It then took the 15% binaural hearing loss percentage and merely stuck it into the Combined Values Chart along with the 15% impairment to the respiratory system which was based on impairment to the whole person and from the Chart came up with a 28% impairment rating. The Court of Appeals erred in this logic.[29]

In the first instance, in our view, because neither physician, in rating the impairment to Choate's hearing, was required to use the AMA Guides to evaluate the loss we fail to see how the Combined Values Chart could be used, a Chart obviously premised on the fact all ratings plugged into it were arrived at by using the evaluative methodology of other pertinent portions of the AMA Guides. It is our opinion the Legislature, when it exempted evaluation of hearing loss from the AMA Guides, by treating such a loss separately, controlled by its own schedule of compensation, intended such a loss would be exempted for all purposes, including combining such loss with another impairment to a different portion of the body in evaluation of whether a material increase is warranted against the Fund.[30]

A second reason we do not believe the Legislature intended the Combined Values Chart of the AMA Guides to be used in evaluation of a material increase in a proceeding against the Fund is the Chart does *not* measure a material increase in the combination of two or more impairments. Although the purpose of the Chart is a method to combine two or more impairments into one impairment rating to the body as a whole, as the explanation provided in the preface quoted above makes clear, use of the Chart would inevitably lead to no situation (or very few) where a material increase could be awarded because combination of two whole person impairment ratings would equal less than the sum of the two added together. We find such a result absurd and we will not presume the Legislature intended it. Accordingly, the Court of Appeals erred in ruling Dr. G.C.M. was required to use the Combined Values Chart of the AMA Guides and in ruling that Chart was applicable in cases for material increase against the Fund.[31]

**28.** The AMA Guides convert binaural hearing loss into impairment to the whole person in Table 4, The Relationship of Binaural Hearing Impairment to Impairment of the Whole Person in Chapter 7, Ear, Nose, Throat and Related Structures. AMA Guides at 158. Table 4 converts 15% binaural hearing impairment to only a 5% whole person impairment.

**29.** The 15% binaural hearing loss rating under no rationale could be used with the Combined Values Chart. As stated at note 28, *supra,* the AMA Guides convert such a hearing loss to impairment to the whole person, and 15% binaural hearing loss converts to 5% impairment to the whole person. In that the Chart deals with ratings of impairment to the whole person, plugging in a binaural hearing loss rating before converting it to a rating to the whole person, is like comparing apples to oranges and is clearly wrong.

**30.** Although we have not decided the precise issue, the same division of the Court of Appeals recently decided an analogous question. In *Oklahoma Tax Commission v. Evans,* 827 P.2d 183 (Okla.App.Div. 4, 1992), it was determined because the Legislature provided an exception for using the AMA Guides in the evaluation of impairment to scheduled members, the exception applied for all purposes including the combining of impairment to two scheduled members (the hands) into impairment to the body as a whole. *Id.* at 183–184.

**31.** We finally note Fund argues our decision in *Special Indemnity Fund v. Stockton,* 653 P.2d 194 (Okl.1982), supports the decision of the Court of Appeals concerning use of the Combined Values Chart of the AMA Guides. Although no issue concerning use of that Chart was involved in *Stockton* we did appear to hold in that case compliance with the AMA Guides was mandated in cases brought against the Fund. However, no critical analysis was contained therein which dealt with the issues disposed of by us in PART VI above. Further, to the extent Fund relies on OWCC Rule 20, 85 O.S.1981, Ch. 4, App., (a rule relied on in *Stockton* ) to support its position the AMA Guides are

For the reasons stated above, the opinion of the Court of Appeals is VACATED and the order of the OWCC is VACATED and the matter is REMANDED to the OWCC for proceedings consistent with this opinion.

HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

HODGES, C.J., and SIMMS, ALMA WILSON and KAUGER, JJ., concur in result.

---

applicable here, we reject Fund's arguments. The OWCC Rules are adopted by the Judges of the OWCC and approved by this Court. 85 O.S.1981, § 1.2(E), now 85 O.S .Supp.1992, § 1.2(E). Section 1.2(E) expressly provides to the extent the Rules are not inconsistent with the law they shall be binding in the administration of the Workers' Compensation Act. Assuming the 1981 version of Rule 20 was meant to require compliance with the AMA Guides in material increase cases against the Fund it would be inconsistent with our view of legislative intent as expressed in PART VI and be of no effect in such regard. Also, to the extent *Stockton* relied on Rule 20 and is inconsistent with PART VI of the instant opinion it is expressly overruled because not in conformity with the applicable law.