2011 OK 25

**Lisa M. REYNOLDS, Petitioner,**

v.

**IC OF OKLAHOMA, L.L.C., International Truck & Engine Corp., Own Risk # 19208, and The Workers' Compensation Court, Respondents.**

No. 107,610.

Supreme Court of Oklahoma.

April 5, 2011.

John N. MacKenzie, Tulsa, OK, for Petitioner.

David J.L. Frette, Hastings & Associates, Tulsa, OK, for Respondents.

WINCHESTER, J.

¶1 We granted certiorari to determine whether an artificial intraocular lens that replaces the natural lens in an eye is a "correction" that is not to be considered in determining a permanent partial disability pursuant to Rule 23 of the Rules of the Workers' Compensation Court. We vacate the opinion of the Court of Civil Appeals and sustain the order of the Workers' Compensation Court.

¶2 On June 7, 2008, the petitioner and claimant, Lisa M. Reynolds, received an injury to her left eye in the course of her employment for IC of Oklahoma, LLC, the respondent. Her injury required medical care and the implantation of an artificial lens. The claimant requested a determination of 100% permanent partial disability for the loss of use of her left eye based on measuring her uncorrected vision and, alternatively, if her permanent partial disability was determined from her corrected vision, she requested a determination consistent with her medical report, which found she had a 46% permanent partial disability after the intraocular lens correction was considered. The respondents'

medical report found 20% partial permanent disability to the claimant's left eye. The Workers' Compensation Court awarded 39% permanent partial disability to the claimant's left eye. The claimant appealed that order. The Court of Civil Appeals vacated the order and remanded to the Workers' Compensation Court to reconsider the disability determination after taking further medical evidence to determine whether the claimant's left eye vision had been restored, rather than corrected, through the use of the artificial lens implant. The respondent petitioned for certiorari, which this Court granted.

¶3 The resolution of the issue in this dispute depends upon the construction of the words "uncorrected vision" in the Rules of the Oklahoma Workers' Compensation Court, Rule 23. 85 O.S.Supp.2010, ch. 4, app. That rule provides that in a physician's report, eye impairment "shall be based upon uncorrected vision." [1] We must determine whether the implantation of the intraocular lens is a "correction" to the claimant's vision that falls within Rule 23.

¶4 The respondent argues the claimant was not entitled to a ruling that she had suffered 100% eye impairment in her left eye because the lens had repaired her eye, rather than merely correcting her vision. In support, the respondent cited *Hereden v. Multiple Injury Trust Fund*, 2002 OK CIV APP 42, 46 P.3d 169. Mr. Hereden had sought review of an order of the three-judge panel on his claim for benefits from the Multiple Injury Trust Fund. Like Ms. Reynolds, he had injured his eye and the lens of his left eye was surgically removed and an artificial intraocular lens was surgically implanted to replace it. He contended that the panel erred by not considering pre-existing impairment to his left eye in deciding issues of material increase and permanent total disability. Like Ms. Reynolds, Mr. Hereden had the lens in his left eye removed as a result of an injury, and an artificial lens surgically implanted to replace the removed lens. He made the same assertion based on the same Workers' Compensation Court Rule, that is, the implantation of the lens did nothing more than correct the loss of natural sight by artificial means. The three-judge panel ruled that the artificial lens was a permanent improvement so that the claimant had no loss of sight within the meaning of "85 O.S.Supp.2000, § 171". *Hereden*, 2002 OK CIV APP 42, ¶2, 46 P.3d at 170.

1. Rule 23 provides:

"The State Industrial Court previously published the Snellen Chart as the criteria for measuring and calculating the percentage of eye impairment in a single eye. This method of rating eye injuries has been accepted and approved by the Ophthalmological Section of the American Medical Association. Physicians may continue to use these criteria in the future. The Workers' Compensation Act provides, in 85 O.S., Section 22(3), that eye impairment is a scheduled member loss. That section states that loss of an eye shall be compensated by the payment of a specified number of weeks of permanent partial disability benefits. However, industrial blindness, in both eyes, according to 85 O.S., Section 3(20), means the claimant is permanently and totally disabled by statutory definition regardless of claimant's capacity to earn any wages in any occupation. Therefore, any computation or conversion of any loss of vision in one eye into the whole man (as done by the American Medical Association's "Guides to the Evaluation of Permanent Impairment") is clearly incorrect according to Oklahoma law. However, partial loss of vision in both eyes may be combined into the whole man provided that the physician states the evaluation of the loss of each eye separately and then evaluates the combination.

"The physician should consult with the "Guides" regarding the equipment necessary to test the function of eyes and for the methods of evaluation. The following Snellen Chart may then be used for computing the percentage of visual efficiency. It should be noted that all measurements shall be based upon uncorrected vision. "The Court recognizes that visual acuity for distance and near is only one of the functions of the eye. Therefore, the physician may wish to consider the visual fields and ocular motility with absence of diplopia. Evaluation of visual impairment may be based upon all three of these functions. Although they are not equally important, vision is imperfect without the coordinated function of all three.

"A physician may deviate from this method of evaluation or may use some other recognized method of evaluation PROVIDED the deviation or the method of evaluation is fully explained. "Oklahoma case law has defined industrial blindness as being 20/200. Therefore, the Court has modified the Snellen Chart to show 100 percent loss to an eye at 20/200 even though the Chart would normally show such loss to be 80 percent. Likewise, it is not necessary to show the percentage loss of vision above 20/200 since there can be no loss greater than 100 percent."
Snellen Chart omitted.

¶ 5 The Court of Civil Appeals in *Hereden* held that the implanted lens was a prosthetic device and its effect on impairment was different than the effect of a corrective device. In addition, where a prosthetic device has replaced a missing biological part of the human body, the inquiry of impairment does not end with the biological loss; it extends to determining the degree of anatomical or functional loss that remains after the prosthetic device is in use. *Hereden*, 2002 OK CIV APP 42, ¶¶ 5, 8, 46 P.3d at 170. The court looked to the tax code for the definition of a prosthetic device. It is defined in 68 O.S.Supp.2010, § 1357.6(C) as a replacement, corrective or supportive device, including repair and replacement parts for the same, worn on or in the body to "(1) 'Artificially replace a missing portion of the body; (2) Prevent or correct physical deformity or malfunction; or (3) Support a weak or deformed portion of the body." The statute specifically provides that the term shall not include corrective eyeglasses, contact lenses or hearing aids." The Court of Civil Appeals reasoned:

"In § 15 of the Act, the Legislature has expressly required that prosthetic devices be provided in cases of loss of one or more eyes (which includes loss of sight of 20/200 and greater). 85 O.S.1991 § 15. This section also requires repair or replacement of a prosthetic device (which has itself replaced a missing biological body part) when the prosthetic device is damaged by a compensable job-related injury. We believe that it is highly unlikely that the legislature would require the provision of a prosthetic device, like an implanted intraocular lens, to replace an injured biological body part so that anatomical or functional use can be restored, and then treat the prosthetic device as a mere correction of deficiency to be disregarded in determining impairment to vision (i.e., anatomical or functional loss of sight)."

¶ 6 We agree with the observations and conclusions of the *Hereden* court. An artificial intraocular lens has a degree of permanence unlike eyeglasses or contact lenses. We hold the implanted lens is a permanent device for the purpose of restoring functional use of the eye, and not a correction such as eyeglasses and contact lenses provide.

CERTIORARI GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.

CONCUR: TAYLOR, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS and GURICH, JJ.

DISSENTS: WATT, J.

NOT PARTICIPATING: COLBERT, V.C.J.

DISQUALIFIED: REIF, J.

WATT, J., Dissenting.

I voted to grant certiorari to decide these issues and resolve the conflict with *Hereden v. Multiple Injury Trust Fund*, 2002 OK CIV APP 42, 46 P.3d 169 (cert. denied 2001). Because I would have written a precedential opinion to the result essentially reached by the Hansen, J. opinion, I respectfully dissent.